**FOR PUBLICATION**
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
--------------------------------------------------------X

In Re:                                                        Chapter 13

Ernest J. Keise and Marcia E. Keise,                          Case No. 16-22678 (MBK)

        Debtors.

--------------------------------------------------------X

**APPEARANCES:**

Jason N. Sena, Esq.
Cutolo Barros, LLC
151 Highway 33 East, Suite 204
Manalapan, New Jersey 07726
*Attorney for Creditor, Seaview at Shark River Island Homeowner's Association, Inc.*

William H. Oliver, Jr., Esq.
William H. Oliver, Jr. & Associates
2240 Route 33, Suite 112
Neptune, New Jersey 07753
*Attorney for Debtors, Ernest J. Keise and Marcia E. Keise*

Albert Russo, Esq., Standing Chapter 13 Trustee
1 AAA Drive
Hamilton, New Jersey 08691

**MICHAEL B. KAPLAN, U.S.B.J.**

**MEMORANDUM DECISION**

**I.     Introduction**

In New Jersey, as in many other parts of our nation, we are often faced with certain seemingly unresolvable conundrums:  For instance, is a tomato a fruit or vegetable? Should the breakfast meat be called pork roll or Taylor ham? Fortunately, the U.S. Supreme Court has stepped in to resolve the former[1], and the latter is unlikely ever to be decided to everyone's satisfaction. In the present matter, the Court is asked to resolve yet another difficult quandary challenging the courts within this district; to wit, whether the lien held by a New Jersey condominium or homeowners association is a statutory lien or consensual lien?[2,3] The answer to this inquiry dictates whether the claim secured by the lien(s) may be modified under a chapter 13 plan, or falls within the ambit of protections provided under 11 U.S.C. § 1322(b)(2). For the reasons explained below, the Court determines that such a lien may be either a statutory lien or a consensual lien, depending upon the circumstances presented, but not both at the same time. However, the Court further resolves that the homeowners association claim at issue in this matter is a *single claim* secured by *two separate liens*—one statutory and one consensual—and, thus, the claim falls outside of § 1322(b)(2)'s refuge from modification.

This matter comes before the Court on a confirmation hearing on the chapter 13 plan ("Plan") filed by the Debtors, Ernest and Marcia Kiese ("Debtors"). Seaview at Shark River Island

---

[1] *See Nix v. Heddon,* 149 U.S. 304 (1893) (determining that tomatoes should be classified as vegetables, rather than fruits, as they are usually served accompanying a meal, and not at the end as a dessert).

[2] A consensual lien is a security interest under the Bankruptcy Code. *See* 11 U.S.C. § 101 (51) (defining "security interest" as a "lien created by agreement").

[3] If the Court successfully navigates through this problem, the Court may then turn its attention to addressing which came first: the chicken or the egg.

Homeowner's Association, Inc. ("Association"), a creditor of the Debtors, filed an Objection to Confirmation, asserting that the Plan should not be confirmed because it improperly seeks to cram-down a partially secured consensual lien on the Debtors' principal residence.[4] The Association contends that its claim falls properly within the protections afforded under 11 U.S.C. § 1322(b)(2) and, thus, may not be modified. The Court heard oral argument in this matter on January 24, 2017, after which the Court allowed a ten-day period within which the parties could submit further briefing to the extent the parties considered it necessary. The Association filed a supplemental brief, while the Debtors elected to rely on their initial submission.

## II.  Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The following constitutes the Court's findings of fact and conclusions of law as required by FED. R. BANKR. P. 7052.[5]

## III.  Undisputed Facts and Procedural History

On June 30, 2016, Debtors filed a voluntary petition under chapter 13 of Title 11 of the United States Code ("Code") and also filed their chapter 13 Plan. Debtors previously filed for

---

[4] Ordinarily, a claim that is secured by a lien on property is treated as a secured claim "only to the extent of the value of the property on which the lien is fixed." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 239, 109 S. Ct. 1026, 103 L.Ed.2d 290 (1989). To the extent that the amount of the claim is greater than the value of the property, it is considered unsecured. 11 U.S.C. § 506(a)(1). "Thus, [to the extent the bankruptcy code permits] a claim that is not fully collateralized can be modified, and the creditor said to be 'crammed down' to the value of the collateral." *In re Ferandos*, 402 F.3d 147, 151 (3d Cir. 2005).

[5] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

3

bankruptcy under chapter 7 on August 4, 2015, and received a discharge on November 20, 2015. The Plan in the current chapter 13 case seeks to modify a claim pursuant to § 1322(b)(2) for unpaid assessments owing the Association in the amount of $15,125.99. The amended proof of claim, filed on July 8, 2016, provides for $9,659.46 of secured debt, which is the remaining balance of an original lien for unpaid assessments. The unsecured portion of the claim is for $5,466.53. This unsecured portion represents the arrears owed to the Association which were not a part of the original lien and arose after the filing of the lien.

The Debtors value their residence in their bankruptcy schedules at $360,000.00, with a first mortgage held by The Bank of New York Mellon ("New York Mellon") in the amount of $362,973.30, pursuant to a filed proof of claim. The Plan provides that the Association's secured claim will be reduced to six months of unpaid assessments, in the amount of $1,710.00, pursuant to the New Jersey Condominium Act, N.J. STAT. ANN. § 46:8B-1 (the "Act" or "Condominium Act"). Although the Association does not argue that it is entitled to the unsecured portion of their claim, the Association contends that it is not limited to the statutory priority amount (six months' worth of unpaid assessments), but rather is entitled to the entire amount of the secured portion, $9,659.46. The parties do not dispute that there is insufficient equity in the residence to support both the entire outstanding claim for unpaid assessments and the mortgage held by New York Mellon.

## IV.  Discussion

The parties have framed the issue in this case as a dispute over the nature of a lien securing the Association's claim for unpaid monthly assessments. Specifically, the parties disagree as to how such a lien first arises; *i.e.*, whether it arises by consent, or by statute. In advocating for their respective positions, both parties operate under the assumption that there is only a single lien

4

securing the claim at issue. However, this Court disagrees with this premise; rather, the Court posits that there are, in fact, two separate liens which operate simultaneously to secure the Association's single claim.

### A. Legal Framework

Although there is no provision of the Code stating that the three types of liens—statutory, judicial and consensual—are mutually exclusive, legislative history indicates that a single lien can fall in only one of these categories. H.R. REP. 95-595, 312, 1978 U.S.C.C.A.N. 5963, 6269 ("Those three categories [judicial liens, security interests, and statutory liens] are mutually exclusive and are exhaustive except for certain common law liens."); *see also Holmes v. Cmty. Hills Condo. Ass'n*, No. 15-6834 (KM), 2016 WL 4950993, at *4 (D.N.J. Sept. 16, 2016) ("The categories [judicial, statutory, and consensual] are mutually exclusive.") (citing *Young v. 1200 Buena Vista Condominiums*, 477 B.R. 594, 598 (W.D. Pa. 2012)).

The precise type of lien at issue is significant because the bankruptcy code allows a debtor to cram-down a claim if the claim meets certain requirements. Specifically, § 1322(b)(2) provides that a plan may "modify the rights of holders of secured claims, other than a claim secured ***only by a security interest*** in real property that is the debtor's principal residence." (emphasis added). Thus, assuming the other requirements of §1322(b)(2) are met, the nature of a lien, *i.e.*, whether it is a consensual lien (security interest), dictates whether modification of the underlying secured claim is permitted. In this case, the Association argues that the lien is a consensual lien protected from modification by §1322(b)(2). Debtors, on the other hand, contend that the lien's origin is statutory and, consequently, the claim is subject to modification.

The statute to which the parties refer is the New Jersey Condominium Act. *See* N.J. STAT. ANN. § 46:8B. "The Act, adopted in 1970, establishes a comprehensive scheme for regulating

5

condominiums and their associations." *Brandon Farms Prop. Owners Ass'n, Inc. v. Brandon Farms Condo. Ass'n, Inc*, 180 N.J. 361, 367, 852 A.2d 132, 136 (2004) (citing *Fox v. Kings Grant Maint. Ass'n, Inc.*, 167 N.J. 208, 218, 770 A.2d 707, 712 (2001)); *see also State v. Panther Valley Prop. Owners Ass'n*, 307 N.J. Super. 319, 327, 704 A.2d 1010, 1014 (App. Div. 1998). Although the association at issue in this case is a homeowners association, as opposed to a condominium association, the Association contends—and Debtors do not contest—that the Condominium Act applies. In taking this position, the Association relies primarily on a recent decision by the New Jersey Supreme Court, which applied the Act to a homeowners association governing a common-interest community consisting of detached single-family homes. *See Qian v. Toll Bros. Inc.*, 223 N.J. 124, 139 n.8, 121 A.3d 363, 372 (2015) ("The detached single-family homes at the Villas are governed by the Condominium Act."). Indeed, New Jersey state law is determinative of this issue, and this Court must be guided by New Jersey case law. Therefore, for purposes of this opinion, this Court will assume that the Act is applicable to the facts of this case. That being said, the Court is compelled to admit that it has reservations regarding the blanket application of the Act to cases involving homeowners associations, and a brief discussion is warranted.

First, this Court finds the legal support for the conclusion in *Qian* to be lacking. In *Qian*, the New Jersey Supreme Court stated, without elaboration, that the Condominium Act governed a dispute involving a homeowners association and a common-interest community consisting of detached single-family homes. In the supporting footnote, the *Qian* court cited to two other New Jersey state court cases which had applied the Condominium Act to the respective communities and associations at issue in those cases. *See id.* (citing *Brandon Farms*, 180 N.J. at 362-63 and *Port Liberte Homeowners Ass'n, Inc. v. Sordoni Const. Co.*, 393 N.J. Super. 492, 498, 924 A.2d 592, 595 (App. Div. 2007)). The communities in *Brandon Farms* and *Port Liberte*, however, were

developments that included single-family detached homes, townhouses, *and* condominiums. Furthermore, each of the communities in those cases had legally established condominium associations who were parties to the litigations. Therefore, it appears that those cases are factually distinguishable from *Qian* and the instant case, which both involve only homeowners associations, and which involve only single-family detached homes and townhomes, respectively. (Decl. in Supp. "Decl. of Covenants and Restrictions" 9, ECF No. 25.)

Additionally, notably absent from the New Jersey Supreme Court's holding in *Qian* is reference to a prior New Jersey Supreme Court case which also addressed homeowners associations. In *Highland Lakes Country Club & Cmty. Ass'n v. Franzino*, 186 N.J. 99, 892 A.2d 646 (2006), the homeowners association for a community consisting of private, single-family homes brought an action against a current property owner for unpaid membership fees and assessments attributable to a previous owner. In deciding the issue before it, the New Jersey Supreme Court did not apply the Condominium Act, nor did it discuss its potential application. Significantly, the court noted that homeowners associations are entities that lack any origin in statute, and instead are created by the filing of governing documents. *See Highland Lakes*, 186 N.J. at 110 ("Lacking any statutory origin, homeowners' associations are created in New Jersey by the filing of a declaration of covenants, conditions, and restrictions contained in deeds and association bylaws."). Thus, the New Jersey Supreme Court's holding in *Highland Lakes*, which has not been explicitly overruled by subsequent case law, suggests that homeowners associations are not governed by statute. This conclusion is supported by secondary sources and additional, still-valid New Jersey case law. *See* SMITH, ESTIS & LI, NEW JERSEY CONDOMINIUM & COMMUNITY ASSOCIATION LAW § 1 (Gann, 2017) ("The Condominium Act does not apply to HOA's [homeowners associations] even if there are some condominium units subject to the

7

jurisdiction of the HOA."); *id*. at § 2:2; *see also, e.g., Panther Valley*, 307 N.J. Super. at 327 (concluding that the Condominium Act was inapplicable to a common-interest development that was governed by a homeowners association).

Finally, the very language of the Condominium Act seems to cast doubt on its application to cases involving homeowners associations. Specifically, the Act provides that a "condominium" is created by the recording of a master deed that is executed and acknowledged by all owners, and that sets forth specific matters as enumerated in section 9 of the Act. *See* N.J. STAT. ANN. § 46:8B-8. It logically follows, then, that "[o]nly when the master deed sets forth matters required under *N.J.S.A.* 46:8B–9 will the comprehensive legislation apply to the property." *Panther Valley*, 307 N.J. Super. at 327 (citing N.J. STAT. ANN. § 46:8B-8). Declarations creating homeowners associations, which "have no statutory guidelines for their establishment," may lack the specific requirements necessary to invoke application of the Condominium Act. SMITH, ESTIS & LI, NEW JERSEY CONDOMINIUM & COMMUNITY ASSOCIATION LAW § 1; *Panther Valley*, 307 N.J. Super. at 327. In this case, it is unclear whether there exists a master deed or other document which sets forth all of the elements mandated by section 9 of the Condominium Act. This Court has reviewed the Declaration of Covenants and Restrictions for this common-interest community and certain matters required by N.J. STAT. ANN. § 46:8B-9 appear to be absent.[6] (Decl. of Covenants and Restrictions, ECF No. 25.)

Notwithstanding a hesitation to apply the Condominium Act, this Court is cognizant that the holding in *Qian* represents the controlling New Jersey Supreme Court precedent. Accordingly,

---

[6] For example, pursuant to the Act, a master deed must include "[a] statement submitting the land described in the master deed to the provisions of the 'Condominium Act.'" N.J. STAT. ANN. § 46:8B-9(a). It does not appear that the Declaration of Covenants and Restrictions in this case includes any such statement.

8

this Court is bound by that decision. The community at issue in this case is a common-interest community governed by a homeowners association and comprised of townhomes which—although not detached—are situated on individually-owned lots. Therefore, the facts of this case are sufficiently analogous to those of *Qian* to warrant its application and, as noted previously, the parties agree that the Condominium Act applies. Accordingly, the Court assumes for purposes of this Opinion that the Act governs.[7] The Court now turns to a discussion on the Act, which provides, in relevant part:

> a. The association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses or otherwise, including any other moneys duly owed the association, upon proper notice to the appropriate unit owner, together with interest thereon and, if authorized by the master deed or bylaws, late fees, fines and reasonable attorney's fees; provided however that an association shall not record a lien in which the unpaid assessment consists solely of late fees. Such lien shall be effective from and after the time of recording in the public records of the county in which the unit is located of a claim of lien stating the description of the unit, the name of the record owner, the amount due and the date when due. Such claim of lien shall include only sums which are due and payable when the claim of lien is recorded and shall be signed and verified by an officer or agent of the association. Upon full payment of all sums secured by the lien, the party making payment shall be entitled to a recordable satisfaction of lien. Except as set forth in subsection b. of this section, all such liens shall be subordinate to any lien for past due and unpaid property taxes, the lien of any mortgage to which the unit is subject and to any other lien recorded prior to the time of recording of the claim of lien.
>
> b. A lien recorded pursuant to subsection a. of this section shall have a limited priority over prior recorded mortgages and other liens, except for

---

[7] The Court notes that, to the extent the Condominium Act is inapplicable to the homeowners association in this case, the Association's lien could not reasonably be construed as statutory and, instead, would be properly characterized as consensual. *See Highland Lakes*, 186 N.J. at 111 (explaining that a homeowners association lien is a lien created by agreement). Nevertheless, without the statute, the lien would not be entitled to any priority and, in this case, would be wholly unsecured. *See* SMITH, ESTIS & LI, NEW JERSEY CONDOMINIUM & COMMUNITY ASSOCIATION LAW § 2:2. As a wholly unsecured security interest, the lien would not be protected by the antimodification provisions of § 1322(b)(2). *See In re McDonald*, 205 F.3d 606 (3d Cir. 2000). Thus, if the Condominium Act were inapplicable, the Association would not be entitled to six months of unpaid assessments, and the entirety of the Association's lien would be subject to modification.

9

> municipal liens or liens for federal taxes, to the extent provided in this subsection. This priority shall be limited as follows:
>
>> (1) To a lien which is the result of customary condominium assessments as defined herein, the amount of which shall not exceed the aggregate customary condominium assessment against the unit owner for the six-month period prior to the recording of the lien.

N.J. STAT. ANN. § 46:8B-21. The parties are in agreement that the Act provides the Association with a priority over pre-existing mortgages and other liens (except real estate tax liens), for six months of unpaid assessments.

### B.    Association's Argument

As set forth above, the Association submits that the claim at issue is secured by a consensual lien. It reaches this conclusion by first noting that the definition of "statutory lien" mandates that a statutory lien arises solely by statute. Specifically, the term is defined as a:

> lien arising solely by force of a statute on specified circumstances or conditions . . . but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

11 U.S.C. § 101(53). The Association, relying on this definition, contends that the lien in this case cannot be a statutory lien because it does not arise solely by statute. Rather, the Association argues that its lien arises by agreement and, thus, is a security interest. The agreement the Association refers to is the Declaration of Covenants and Restrictions (the "Declaration").[8] The Association

---

[8] The Association contends that the terms "Master Deed" and "Declaration of Covenants and Restrictions" are used interchangeably and refer to the same document. Indeed, "homeowners' associations are created in New Jersey by the filing of a declaration of covenants, conditions, and restrictions contained in deeds and association bylaws." *Highland Lakes*, 186 N.J. at 110 (citations omitted). Condominium associations are created in New Jersey by the filing of a master deed that complies with the requirements of the Condominium Act. *See* N.J. STAT. ANN. § 46:8B-8. Therefore, for purposes of this opinion, the court will accept the Association's proposition that the terms "master deed" and "declaration" have the same practical effect. *See* SMITH, ESTIS & LI, NEW JERSEY CONDOMINIUM & COMMUNITY ASSOCIATION LAW 51 (explaining that the homeowners association's declaration of covenants is the counterpart to the condominium association's master deed).

10

points to a provision in the Declaration which addresses assessments and explicitly provides for the creation of a lien:

> Section 1. <u>Creation of the Lien</u>. Every Lot Owner by acceptance of a deed or other conveyance for a Lot, whether or not it shall be so expressed in any such deed or other conveyance, shall be deemed to covenant and agree to pay to the Association such sums, by way of annual or special Common Expense assessments or charges as hereinafter more particularly described.  Each such assessment, together with such interest thereon, late charges, and cost of collection thereof (including reasonable attorneys' fees) shall be a continuing lien upon the Lot against which each such assessment is made and shall also be the personal obligation of the Owner of such Lot at the time when the assessment fell due.  Further the Township of Neptune shall have a continuing lien against each such Lot for its pro rata share of all real estate taxes due and payable to the Township of Neptune by the Association for real estate taxes assessed against the Common Property.  Such lien shall be apportioned equally among all Lots and shall be enforceable by the Township of Neptune in the manner provided by law with respect to the real estate taxes assessed directly against each such Lot.

(Decl. in Supp. 28-29, ECF No. 25.)  Because an agreement creating a lien exists, and because the definition of "statutory lien" specifically excludes security interests, the Association concludes that the lien in this case cannot be a statutory lien, and instead must be characterized as a consensual lien arising from the language of the Declaration.

Further, the Association asserts that the Condominium Act does not create a lien, but serves only to dictate the priority and mechanism for enforcement of the extant consensual lien.  Inasmuch as the Act gives partial priority to six months of unpaid assessments, the Association contends that a portion of the lien is secured, ahead of the existing mortgage lien held by New York Mellon; as a result, the entire lien cannot be modified.  *See Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 113 S. Ct. 2106, 124 L. Ed. 2d 228 (1993) (holding that a claim, on the debtors' principal residence, which is secured by any equity is protected from modification under § 1322(b)(2)); *In re Rones*, 551 B.R. 162, 168 (D.N.J. 2016) ("Thus, if even one dollar of a creditor's claim is secured by a security

interest in a debtor's principal residence, then the entire claim—both secured and unsecured portions—cannot be modified under Section 1322.") (citations omitted).

### C. Debtors' Argument

Debtors first argue that the lien is a statutory lien and is subject to modification. In support of this position, Debtors cite to cases from other districts that have addressed liens stemming from unpaid condominium fees. *See In re Johnson*, 108 B.R. 81 (Bankr. W.D. Pa. 1989); *In re Stern*, 44 B.R. 15 (Bankr. D. Mass. 1984); *In re Nentwick*, 79 B.R. 145 (Bankr. N.D.N.Y. 1987); *In re Lopez*, 512 B.R. 663 (Bankr. D. Colo. 2014). These cases hold that condominium liens are statutory and subject to modification. Debtors assert that the New Jersey statute, which creates the lien in this case, is similar to the lien-creating statutes in the cited cases. Thus, Debtors contend that, notwithstanding a similar lien-creating provision in the Declaration, the lien here arises by statute.

Debtors further point out that, but for the Condominium Act, the Association's lien would be totally unsecured. Additionally, Debtors question whether, absent a statute, the Declaration in fact creates a security interest inasmuch as it is questionable whether Debtors actually agreed to the terms of the Declaration, and whether there was consideration sufficient to constitute an agreement.

Debtors set forth an alternative argument, which appears somewhat confusing. Debtors contend that the lien is supported by both a security agreement and a statute, and since § 1322(b)(2) protects claims that are secured *only* by a security interest, Debtors conclude that the lien at issue

12

Case 16-22678-MBK    Doc 28    Filed 03/02/17    Entered 03/02/17 16:10:30    Desc Main
Document    Page 13 of 19

may be modified because "[u]ndeniably[,] the statute is indeed an extra source of collateral."[9] (Letter Brief in Support 7, ECF No. 21). Debtors next arguments are based on the Condominium Act. First, Debtors suggest that the statute affords only a priority right to payment and not an elevated lien status. *See* N.J. STAT. ANN. § 46:8B-21(b)(1). Second, Debtors assert that the statute bifurcates the lien into two distinct liens: one with a priority status, and one subordinate to other liens on the property. Finally, Debtors argue that policy considerations favor modification.

### D. Relevant Case Law

The Court of Appeals for the Third Circuit has not addressed the issue before this Court; notwithstanding, several courts within the Circuit have issued rulings in attempts to resolve whether, and to what extent, claims secured by condominium liens and homeowner association liens may be modified in bankruptcy. This Court seeks to build upon the existing case law.

In *In re Robinson*, No. 11-26981-RTL, 2012 WL 761251 (Bankr. D.N.J. Mar. 7, 2012), the condominium association filed a lien pursuant to the association's master deed and the New Jersey Condominium Act. The debtor's chapter 13 plan attempted to cram-down the lien pursuant to § 1322(b)(2). In determining whether modification was appropriate, Judge Lyons stated that the association "has a lien which arises from the master deed and the statute." *Id.* at *3. The court did not make a finding regarding the nature of the lien; nevertheless, implicit in Judge Lyons' application of §1322(b)(2) is the determination that the lien was consensual. Moreover, he found that the statute gave the lien a partial priority, leaving the claim partially secured and nonmodifiable under § 1322(b)(2).

---

[9] While the Debtors may be articulating the Court's ultimate conclusion that there are two separate liens at issue in this case, the Debtors' characterizations of a "lien" as an "extra source of collateral" reflects awkward terminology and conflation of concepts. There is only one source of collateral—the underlying real estate. The multiple liens represent different mechanisms to enforce the claim secured by the collateral.

13

In *In re Rones*, 531 B.R. 526 (Bankr. D.N.J. 2015), *rev'd in part,* 551 B.R. 162 (D.N.J. 2016), the debtor attempted to cram-down a claim for outstanding condominium assessments, secured by a lien on the debtor's primary residence. The parties disputed the genesis of the lien; to wit, did the lien arise by statute (N.J. STAT. ANN. § 46:8B-1) or through the language in the condominium association's master deed? The bankruptcy court determined that there was a single, consensual lien on the property, that held a statutory priority. Essentially, the bankruptcy court ruled that the lien could be bifurcated and that the portion of the lien that did not have a statutory priority was subject to modification. On appeal to the district court, the parties did not contest the bankruptcy court's determination that the lien was consensual; instead, the parties limited the issue before the district court to whether a consensual lien, with a partial priority, could be crammed-down. *See In re Rones*, 551 B.R. 162 (D.NJ. 2016). The district court, in reversing the bankruptcy court, held that since a portion of the consensual lien had a statutory priority which primed other liens, it was partially secured and, thus, could not be modified under § 1322(b)(2). In sum, the district court reached the conclusion that, because the consensual lien was partially secured by statute, the entire lien could not be modified.

In *Holmes*, 2016 WL 4950993, another New Jersey district court case, the parties likewise disputed the nature of a condominium association lien, and the concomitant issue as to the ability to modify the secured claim under § 1322(b)(2). In *Holmes*, the district court remanded the case to the bankruptcy court to determine whether the lien: (i) was a statutory lien or a security interest; (ii) had a priority status; and, relatedly, (iii) was secured by equity in the property. In remanding the case for further factual findings, the district court noted that "[t]hose dueling claims of exclusivity seem to reinforce the notion that the contractual and statutory liens, assuming both are present, must be considered separately." 2016 WL 4950993 at *4. Thus, this language suggests

14

that the district court perceived the possibility of multiple liens operating simultaneously. As of the date of this opinion, the bankruptcy court has not yet rendered a decision in this matter.

### E. Analysis

As previously mentioned, both parties view the Association's claim as enforceable by a single lien. In contrast, this Court views the Association's claim as secured simultaneously by two separate liens—one consensual lien created by the Declaration, and one statutory lien created by the New Jersey Condominium Act—with each lien available to the Association to enforce its claim. Indeed, each lien offers both benefits and burdens with regard to creation, perfection and enforcement. By way of example, creation of a lien under the Act requires a detailed process of recording notices, not similarly necessary to enforce the lien created under the Declaration. Likewise, the Act grants a limited priority for the statutory lien, unavailable to the Association absent application of the Act.

The Condominium Act explicitly provides for the creation of a lien. *See* N.J. STAT. ANN. § 46:8B-21a ("The association *shall have a lien* on each unit for any unpaid assessment duly made by the association for a share of common expenses or otherwise . . .") (emphasis added). The Association's argument that the Act does not create a lien is simply without merit; clearly, the Condominium Act's plain and unambiguous language creates a lien. Indeed, the Association cannot point to a single provision of the Act which requires that there be language in a master deed, or elsewhere, before the statutory lien can be effective. In point of fact, the language of the Act itself suggests otherwise. The Condominium Act provides that the Association will be entitled to "late fees, fines and reasonable attorney's fees" only "if authorized by the master deed or bylaws" *Id*. The Act explicitly states that such fees are recoverable only if there is specific language providing for same; if the legislature had sought to require similar language for the

15

creation of a lien, it could have done so easily. Pointedly, the Act does not require that a master deed include any such language giving rise to a lien. *See* N.J. STAT. ANN. § 46:8B-9 (outlining the required contents of a master deed).

While the Court deems it evident that the Act, in and of itself, creates a lien securing outstanding assessments, the Court also finds that the Declaration creates a consensual lien. Specifically, the Declaration states in relevant part, "assessment[s], together with such interest thereon, late charges, and cost of collection thereof (including reasonable attorneys' fees) *shall be a continuing lien* upon the Lot against which each such assessment is made." (Decl. of Covenants and Restrictions 28, ECF No. 25.) Thus, by consenting to the Declaration, the Debtors also have granted a lien in favor of the Association in the event the Debtors fail to pay assessments.

The Association contends that the existence of an agreement creating a security interest precludes the lien from being classified as a statutory lien. Indeed, a statutory lien is defined as a "lien arising solely by force of a statute" and does not include a "security interest or judicial lien whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." 11 U.S.C. § 101(53). The Association's position would be more persuasive if only one lien existed; in contrast, however, this Court adjudges that there are, in fact, two separate liens. Rather than preclude the existence of a statutory lien, the Declaration instead creates a second, separate lien. Each of the liens acts independently and is enforceable in order to allow the Association to satisfy its claim. Nothing in the Condominium Act, the Declaration or the bankruptcy code precludes the creation and employment of multiple enforcement mechanisms to recover a single debt.

The Court further observes that a different section of the Condominium Act reinforces the premise that the Association's claim is secured by two separate liens, one statutory and one

consensual. The Act contemplates a scenario in which multiple liens may exist simultaneously to enforce a single claim:

> f. Liens for unpaid assessments may be foreclosed by suit brought in the name of the association in the same manner as a foreclosure of a mortgage on real property… *Suit to recover a money judgment for unpaid assessments may be maintained without waiving the lien securing the same.* Nothing herein shall alter the status or priority of municipal liens under R.S.54:5-1 et seq.

N.J. STAT. ANN. § 46:8B-21(f) (emphasis added). Under the section, an association may pursue an *in personam* judgment, resulting in a judgment lien, without waiving its rights to pursue enforcement of its statutory lien.

Relevant case law further supports this Court's finding. A recent New Jersey appellate court decision permitted a homeowners association to levy on a judicial lien, even though the association was entitled to a statutory lien securing the same claim. *See Hickory Hill at Totowa Homeowners Ass'n, Inc. v. Ortiz*, No. A-0894-15T2, 2017 WL 393582 (N.J. Super. Ct. App. Div. Jan. 30, 2017).[10] Additionally, as discussed, Judge McNulty's analysis in *Holmes* suggests that both a contractual and statutory lien may be present, and should be considered separately. 2016 WL 4950993 at *4. Applying the reasoning in *Holmes*, this Court finds that both liens are present, and agrees that they must be considered separately.

Finally, this Court's ruling reinforces public policy concerns. As the Third Circuit has observed, "[t]he legislative history of § 1322(b)(2) 'indicates that it was designed to protect and promote the increased production of homes and to encourage private individual ownership of homes as a traditional and important value in American life.'" *In re Ferandos*, 402 F.3d 147, 151

---

[10] Ironically, while the Court rules that the Association has two separate, independent liens securing its claim, this section of the Act raises the possibility that at some point, the Association could hold three independent liens, simultaneously, to enforce its claim: statutory, consensual and judicial.

17

(3d Cir. 2005) (quoting *In re Davis*, 989 F.2d 208, 210 (6th Cir. 1993)). The Supreme Court has also noted that the protection afforded to residential mortgage lenders by § 1322(b)(2) "was intended to encourage the flow of capital into the home lending market." *Nobelman*, 508 U.S. at 332, 113 S. Ct. at 2112, 124 L.Ed.2d 228. However, a residential mortgage is not at issue in this case. Instead, the claim is for unpaid condominium association fees, which are not the types of debts Congress sought to protect by enacting § 1322(b)(2).

Given that this Court views the claim as supported by two liens, the claim does not fall within the ambit of § 1322(b)(2) and can be modified. As previously noted, a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured *only* by a security interest in real property that is the debtor's principal residence." § 1322(b)(2) (emphasis added). Here, the claim is secured by *both* a security interest (consensual lien) and a statutory lien; accordingly, it is not afforded the protections of § 1322(b)(2).

For the reasons discussed, the Association possesses a secured claim for $1,710.00, representing six months of unpaid condominium assessments, payable under the Debtors' Plan. The Association's statutory lien will have a "limited priority over prior recorded mortgages and other liens, except for municipal liens or liens for federal taxes, to the extent provided in this subsection." N.J. STAT. ANN. § 46:8B-21b. The residual amount of the Association's lien has no priority and is subordinate to the existing lien held by New York Mellon. The balance of the Association's claim is unsecured and treated under the Plan with all other general unsecured claims.

**V.      Conclusion**

This Court overrules the Association's objection and grants confirmation of the Debtors' proposed plan, which provides for payment of the secured portion of the statutory lien, representing six months of unpaid condominium assessments. Debtors' Counsel or the Standing Chapter 13 Trustee shall submit a proposed form of order consistent with this Court's opinion.

Dated: March 2, 2017